## THE SICILIAN PRINCE.

### (District Court, S. D. New York. January 29, 1904.)

1. COLLISION—OVERTAKING STEAM VESSEL—CONSTRUCTION OF RULES.

   A steam vessel coming up with another from a direction more than two points abaft her beam does not cease to be an overtaking vessel, required by article 24 of the inland navigation rules (30 Stat. 101 [U. S. Comp. St. 1901, p. 2883]) to keep out of the way, because of the fact that the overtaken vessel is at the time going astern.

2. SAME—EVIDENCE CONSIDERED.

   While the steamship Sicilian Prince, on the east side of the channel in Upper New York Bay, was turning in order to head out to sea, and was going astern in a northwesterly direction, she was overtaken by the steamer Jefferson, coming down the bay, and a collision resulted. The Jefferson was going at a speed of about 14 knots, nearly her full speed, with an ebb tide, and maintained such speed until the collision. She was overhauling another steamer, which was on her starboard side, and passed to the right of the Sicilian Prince, although whether she was far enough behind such steamer to have passed to starboard under her stern was in dispute. *Held*, that she was in fault for not keeping out of the way as an overtaking vessel as required by the rules; for being on the wrong side of the channel, also, in violation of the rules; and for not reducing her speed and falling behind the other steamer, if necessary, to leave her free to pass to starboard before she reached the Sicilian Prince. *Held*, also, that the Sicilian Prince was guilty of contributory fault in that, while backing across the main channel in a crowded harbor, and having seen the two steamers approaching when a mile distant, and stopped her engines, she failed to give further attention to them, or to repeat her signal that she was going astern, when the action of the Jefferson indicated that it had not been heard.

3. SAME—ENTRIES IN LOG.

   Where no entries in relation to a collision are made in the ship's log, or when the entries which are made are intentionally meager, vague and perfunctory, or when portions of the log probably containing entries relating to a collision have been removed, the presumption is that the vessel whose log has been so kept was in fault.

In Admiralty. Suit for collision.

Wing, Putnam & Burlingham, for libelant.
Convers & Kirlin, for claimant.

HOLT, District Judge. This libel was filed to recover damages caused by a collision between two steamers, the Sicilian Prince and the Jefferson, which occurred on April 2, 1903, in the Upper Bay of New York, about opposite the Erie Basin. The Sicilian Prince had been anchored that afternoon on the west side of the bay, just below the Statue of Liberty. The tide was ebb, so that, while at anchor, she lay headed in a northerly direction. She weighed anchor, and started to go to sea, and in order to do so was obliged to turn completely around. She went from her anchorage across to the east side of the channel under a port helm, without succeeding in turning down the

stream.. She thereupon backed across the channel to the west side, and then again crossed to the east side, but again failed to turn enough to go, out to sea.. .She stopped near Buoy 14, on the east side of the channel, having at that time got turned so as to head about southeast. She then again started to back up into the channel, and while backing her officers noticed two steamers, which were the El Paso and the Jefferson, coming down from New York on substantially parallel courses, the El Paso leading, and being more to the westward. The Sicilian Prince, while these two steamers were at a considerable distance, estimated by different witnesses at from half a mile to a mile, sounded three blasts on her whistle, to indicate that she was going astern. The witnesses on the Jefferson deny that they heard three blasts, but testify that they heard what they understood to be two blasts from the Sicilian Prince. They state that they thought that this was a signal given to a tug with a tow, which they assert was then in the neighborhood of the Sicilian Prince. The witnesses on the Sicilian Prince deny that there was any such tug in their vicinity. Immediately after sounding the three blasts, the Sicilian Prince stopped her engines. Her witnesses state, in substance, that the engines remained stopped two or three minutes, and that she had substantially ceased to have sternway; that the two steamers came on down the bay practically without changing their course, the Jefferson bearing down close to the Sicilian Prince; that the Jefferson, when about a ship's length from the Sicilian Prince, sounded one blast on her whistle; that the officer at the stern of the Sicilian Prince, when the Jefferson was from about 60 to 100 feet away, noticing the danger of a collision, telegraphed to the bridge an order to go ahead, and that this order was transmitted from the bridge to the engine room, and the engines immediately put in motion. The bow of the Jefferson passed the Sicilian Prince, and the entire vessel almost wholly cleared her. Just before the collision, the Jefferson, seeing that one was inevitable, put her wheel hard astarboard, to throw her stern away and lessen the blow. The starboard quarter of the Sicilian Prince struck the port side of the Jefferson about 60 feet from the stern, causing considerable damage to the Jefferson, but very trifling damage to the Sicilian Prince.

The evidence establishes, in my opinion, that the Jefferson approached the Sicilian Prince from a direction which was in fact more than two points abaft the beam of the Sicilian Prince, and that, even upon the view of the evidence most favorable to the Jefferson, it was certainly a matter not free from doubt whether the direction was not more than two points abaft the beam of the Sicilian Prince; and that the place of the collision was near the easterly side of the channel, about 200 or 300 yards northerly or northwesterly from Buoy 14. In my opinion, therefore, the Jefferson was in fault, for the reason that, being an overtaking vessel, she did not keep out of the way of the Sicilian Prince, as required by rule 24; for the reason that she did not keep to that side of midchannel which lay on her starboard side, as required by rule 25; and for the reason that if, as alleged by the witnesses for the Sicilian Prince, the Jefferson was sufficiently behind the El Paso so that she was free to port and pass to the right under her stern, she did not do so; and, on the other hand, if, as alleged by the witnesses

for the Jefferson, her bow overlapped the El Paso, so that she could not safely port without danger of a collision with the El Paso, she was in fault for approaching so near to the Sicilian Prince in such a situation, and should, before approaching so near, have stopped, and fallen behind the El Paso, so as to be free to port and pass to the right in safety. The collision happened in the daytime. The weather was clear. There were no other vessels in the neighborhood. The main channel there is more than half a mile wide. The Jefferson was making about 14 knots an hour, very nearly her full speed, and did not slacken speed at all before the collision. She was a little faster than the El Paso, and was overhauling her, and apparently preferred to take the risk of shaving close to the Sicilian Prince, rather than stop for a few minutes and drop back, or change her course.

The extraordinary theory asserted by the captain of the Jefferson in his testimony that, as the Sicilian Prince was going astern, her stern was to be deemed her bow, and she was bound to keep out of the way under the starboard-hand rule, while the Jefferson had the right of way, and was bound to keep her course and speed, is, in my opinion, entirely untenable. The sole test under rule 24, as to what is an overtaking vessel, is whether she is coming up with another vessel from a direction more than two points abaft her beam; and, in my opinion, the question whether the overtaken vessel is going ahead or astern is immaterial on the question whether another vessel is an overtaking vessel. Any steam vessel under way, whose engines are going at full speed astern, is required by rule 28 to indicate that fact by three short blasts on the whistle; and the neglect of an overtaken vessel, going astern, to give such a signal might be sufficient, under all the circumstances of a case, to exonerate an overtaking vessel for a collision. But the presumption in all cases is that a vessel which overtakes another and comes in collision with it is in fault.

The question whether the Sicilian Prince should also be held to have been in fault is one upon which I have felt much doubt. The faults of the Jefferson, in my opinion, were clear; and it is undoubtedly the general rule that, if one vessel is plainly in fault, any reasonable doubt as to the contributory faults charged against the other vessel should be resolved in her favor. The Victory, 168 U. S. 423, 18 Sup. Ct. 149, 42 L. Ed. 519, and cases cited. But upon full consideration I think that the Sicilian Prince committed faults too serious to be overlooked. She was backing across the main channel of a crowded harbor. She saw the El Paso and the Jefferson coming down the harbor, a long distance away. All of the witnesses say half a mile or more; several put it at three-quarters of a mile or a mile; and Braun, the pilot, an unusually competent observer, puts the position of the Jefferson at a mile and a half away when he first noticed the vessels coming, and a mile away when the three blasts of the whistle were sounded. The Sicilian Prince had previously started astern at full speed, and had been going astern at full speed two or three minutes. After sounding the signal that she was going astern, her engines were stopped. The only apparent reason for stopping was to avoid the danger of a collision with the two approaching steamers. The witnesses on the Sicilian Prince testify that when the collision occurred the engines had

been stopped two or three minutes, and that the Sicilian Prince had then ceased to have any sternway. Some of the witnesses even say that the ebb tide was then moving her down towards the buoy. But upon all the evidence I do not believe that the Sicilian Prince had ceased to have sternway. The manner in which the vessels came together in the collision seems to me to show that the Sicilian Prince was still forging astern to some extent. The entry about the collision in the chief officer's log is as follows: "While coming astern in slewing ship round, stern touched SS. Jefferson, who was coming down harbour; damage, if any, unknown. Steamer's sternway indicated by three blasts on whistle." This entry admits, and from all the evidence I conclude, that the Sicilian Prince was still making sternway to some extent when the accident happened. I think, under these circumstances, that she was in fault for keeping no proper lookout, and paying no proper attention to the vessels to avoid which she had stopped her engines, and for not repeating her signal that she was going astern, or, if she had substantially stopped, for not sounding alarm whistles. She admittedly saw the two vessels coming down, and gave them a signal that she was going astern, but it was when they were a very long distance away. No answer was received, and there was nothing to indicate that the approaching steamers had noticed or understood the signal. The engines on the Sicilian Prince were stopped, and apparently were stopped solely because the El Paso and the Jefferson were coming across her path, but the officers and the lookout on the Sicilian Prince apparently paid no further attention to those two vessels, and did not notice their approach until the Jefferson, about a ship's length away, sounded one whistle. The officer at the stern, who should have been on the watch for them, first thought that there was danger of collision when the Jefferson was from about 60 to 100 feet away. He then gave an order to go ahead at full speed, but the order was too late. If those on the Sicilian Prince had noticed that the two steamers were continuing to bear down in her direction, I think her pilot should have suspected that the three blasts previously given had not been heard, or had been misconstrued, and should have repeated the signal that she was going astern, while the Jefferson was still a sufficient distance away. Any vessel backing across a channel, in the way of other vessels navigating it, is bound to exercise extreme care to notify the other vessels of her maneuver.

The records of the logs of the Sicilian Prince are unsatisfactory. The meager entry in the chief officer's log has been already quoted. The chief engineer's log and the engineer's scrap log, in its present condition, contain no entries about the collision. The scrap log shows that a leaf has been cut out between the pages containing entries of March 30th and of April 3d, and no explanation is given why or how this page was removed. The meagerness of the entry in the chief officer's log, the absence of any entry in the engineer's log, and the removal of the leaf in the scrap log all seem to me to have been intentional. It is the universal custom of all vessels to keep a log, and the statutes of the United States require them to do so. This requirement is not fulfilled by having a book called a log, in which no entries are made, or in which the entries which are made are intentionally meager,

vague, and perfunctory, or in which leaves probably containing entries relating to transactions in litigation are removed. The legitimate inference in all such cases is that, if the true facts were entered in the log, they would be unfavorable to the vessel.

My conclusion is that both the Jefferson and the Sicilian Prince were in fault, and that, therefore, there should be a decree in favor of the libelant and against the Sicilian Prince for half the damages suffered by the Jefferson, with a reference to ascertain the amount.