THE TEMPLE E. DORR.

(District Court, D. Oregon. April 30, 1917.)

No. 7040.

COLLISION ⨂101—OVERTAKING VESSELS.

Two tugs were proceeding up the Columbia river in the daytime, one behind the other and connected by a line, although each was under its own steam. There was some ice in the river, through which the leading tug was breaking a channel until it struck an obstruction in the ice and

stopped. The other tug came alongside, and then backed slowly away to prevent fouling the propeller of the leading vessel. When the tugs stopped, the steam schooner Dorr was some quarter of a mile behind, following. When within about 300 feet she signaled her intention to pass to starboard and come ahead, coming into collision with the near tug. *Held*, that neither tug was chargeable with fault contributory to the collision for not giving alarm signals or backing signals, since the facts that they had stopped and the backing movement of one were known to the Dorr, but that the latter, whose duty it was to keep out of the way, was solely in fault.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 216.]

In Admiralty. Suit for collision by the Port of Portland, owner of the steam tug Ocklahama, against the steam schooner Temple E. Dorr, the Hicks-Hauptman Navigation Company, claimant, with cross-libel. Decree for libelant.

Wood, Montague, Hunt & Cookingham, of Portland, Or., for libel-ant.

Snow & Bronaugh, of Portland, Or., for claimant.

WOLVERTON, District Judge. This is a libel by the port of Portland against the Temple E. Dorr, to recover damages on account of alleged negligence on the part of the Dorr, whereby she was brought into collision with the tug Ocklahama, and a cross-libel by the Dorr against the port of Portland, claiming that the fault for the collision was on the part of the tugboat Wallula, having in tow the Ocklahama, and especially on account of the negligent acts and maneuver of the Ocklahama.

On the morning of the collision, the same occurring on January 20, 1916, there was considerable ice in the river. The Wallula was steaming up stream, breaking the ice as she proceeded, and the Ocklahama was following, attached to the Wallula by a hawser; but both were navigating under their own steam. When the boats came nearly abreast of Elliott Point, the Wallula ran into some partly submerged piles incased in the ice, which were bound together at one end, and proved to be a floating dolphin, which had broken loose from its anchorage. This brought the Wallula to a full stop, and the Ocklahama ran up on her starboard side; some of the witnesses say to one-half of the length of the Wallula, and others to quite her full length. In order to prevent the hawser from fouling the Wallula's wheel and rudder, the Ocklahama backed away. The tide at the time was ebbing slightly, but the Ocklahama used her wheel a first and second time. It was when she had stopped her wheel the second time, or shortly thereafter, that the Dorr, while steaming up from the rear, came into collision with the stern of the Ocklahama, and the damages complained of ensued. The Dorr blew a passing whistle, indicating that she was going to starboard, as she approached the Ocklahama. There is a dispute as to whether there was an answering whistle blown. The Wallula's pilot says not, but others affirm that there was.

About opposite Elliott Point the channel makes a slight curve to port, looking up the river, and the testimony seems to indicate that the

Wallula and Ocklahama had entered upon the curve at the time the former came to a stop. It was thought by one, if not two, of the witnesses, that the Wallula had changed her course out of the channel and toward the Washington shore; but this is not substantiated, in the light of the other testimony. The testimony is in conflict touching the time that elapsed after the passing whistle was sounded by the Dorr to the time of the collision. The witnesses on the Wallula and Ocklahama at the time, speaking to the subject, are impressed that it was very short, measured by a few seconds only. The witnesses who were on the Dorr fix the time ranging from 1½ to 3 minutes. Elliott, who from the shore saw the boats come into contact, estimates the time at about 3 minutes, and he further thinks that the Dorr was about 300 feet from the Ocklahama when the whistle was sounded. Captain Turppa, who was on the Ocklahama, says in effect that, after she had run up on the starboard side of the Wallula, the Ocklahama backed a first and a second time, meaning by that that she used her wheel to propel her astern; that the first time was to stop her headway, and the second to carry her astern; and that her movement was straight astern of the Wallula in the channel, without veering to starboard, or, if she veered in that direction at all, that it was caused by the current. At no time did the Ocklahama navigate so far astern of the Wallula as to take the bight out of the tow line. A witness on the Dorr thinks that the line was rendered taut by the Ocklahama's backing, even to the extent of drawing the Wallula after her; but this was not the case, as none of the witnesses who were in better position to observe the situation so testify.

There were at the time on the bridge of the Dorr Julius Allyn, the pilot in charge of the ship; E. R. Hoffman, second mate, an experienced mariner; and Capt. M. Bliesath, the master—all of whom have given their testimony. According to these witnesses, the Dorr was from 800 feet to a quarter of a mile away from the Wallula and Ocklahama when they became aware that the latter boats had come to a stop in the channel. Orders were at once given to stop the engine and put the wheel hard over to port, which would throw the ship's course to starboard. When within 500 or 600 feet of the boats ahead, the Dorr's engines were ordered full speed astern, which, with the style of her propeller, had the effect to accentuate her movement to starboard. She had commenced to answer her helm before the last order was given. The Ocklahama was observed to be backing her wheel, when an order was given the Dorr to stop her engine. The three witnesses differ somewhat as to the relative time in which these incidents transpired. Allyn, the pilot, says that shortly after he put his engine astern he saw the Ocklahama commence to swing to starboard, and when about 300 feet away from the boats ahead he gave the passing signal of one whistle. He was then asked, "How was the Ocklahama lying at that time?" to which he answered, "Swinging out across the channel." He further says, "The nearer we approached the Ocklahama, the faster she swung out." Bliesath was impressed that the three orders, namely, one whistle blown as a passing signal, the wheel of the Dorr put hard aport, her engines stopped and put full speed astern, all happened

inside of two or three seconds, all of which was done when the Dorr was about 800 to 1,000 feet away from the other boats. At this time the witness had noticed that the paddlewheel of the Ocklahama was backing. Hoffman's testimony is that, when the Dorr was a quarter of a mile away, he told Allyn that the Ocklahama was working her wheel astern, and that immediately he (Allyn) gave the order, "Hard aport."

The witness Elliott was on shore at Elliott Point at the time of the collision, and he thinks about 550 feet distant. His testimony is to the effect that the Ocklahama backed at an angle across the channel, and was still in motion, moving astern, when the collision occurred; that she had moved away from the Wallula about 75 feet, but the witness could not say whether the Dorr had changed her course or not. He does say, however, that the Dorr kept coming up straight, right against the ice on the starboard side. Witnesses on the Ocklahama seemed to think the Dorr approached to port, which would be to the starboard of the Ocklahama looking astern.

The relative positions of the two boats at the time they came into collision are fixed satisfactorily by the angle at which the Dorr struck the Ocklahama. Her nose struck the beam supporting the cylinder timbers from 2 to 3 feet to the starboard of the center looking from the Dorr, and, after breaking it, struck the cylinder timber to the right several feet further ahead, and left its mark there. After so striking the Ocklahama, the Dorr backed up somewhat, and attempted to go forward again, when the port bluff of her bow came in contact with the Ocklahama's fantail. This accounts for the scar found on the Dorr's port bow. This shows that, if the Dorr had changed her course two points, as one of the witnesses seemed to think she had, it would be nearly sufficient, if not quite, to account for the angle at which she collided with the Ocklahama. The Ocklahama's backing across the channel could not, therefore, have been at any considerable angle.

Two rules of admiralty are invoked—one by the libelant, namely, that an overtaking vessel shall keep out of the way of the overtaken vessel; and the other by the respondent, that, when vessels are in sight of one another, a steam vessel under way, whose engines are going full speed astern, shall indicate that fact by three short blasts of the whistle. The first rule has but little application here, because the Wallula and Ocklahama were not moving ahead. The Wallula was virtually at anchor, or, if moving at all, was drifting very slowly astern with the current. The Ocklahama was maneuvering to keep her line from fouling the Wallula's wheel and rudder. By a stronger reason, an approaching vessel is required to keep out of the way of another at anchor, or at a full stop, knowing her condition and position. It may well be doubted whether the Ocklahama comes within the rule invoked by respondent. She can hardly be said to have been under way, with her engines going full speed astern. At no time were her engines going full speed astern, and she was not navigating astern in the sense that she was moving from one place to another in the water. The case of The Sicilian Prince (D. C.) 128 Fed. 133, is cited. The ship had been backing full speed astern, but had stopped her engines, and was held at fault in not giving the proper signals under the rule.

242 F.—61

This case is illustrative only so far as it has any bearing on the present case.

But, conceding the application of the rule, and that it was the duty of either the Ocklahama or the Wallula to blow three blasts of the whistle, and conceding even further, as it is argued, that it was incumbent upon them, or either of them, to give a danger signal, or to have a watch upon the Ocklahama, I am of the firm opinion that the omission to do either of these things did not contribute in the least to the collision that ensued. All the witnesses on the Dorr concede that they observed the positions of the Wallula and the Ocklahama, that they had come to a halt in the ship's channel, and that the Ocklahama was backing her wheel when the Dorr was from 800 feet to a quarter of a mile distant. Further than this, they knew, if their testimony is true, that the Ocklahama was backing diagonally in the ·channel only a little time after they had observed that the boats had come to a stop. Indeed, Allyn gave a passing whistle when, according to his own statement, the Ocklahama was swinging across the channel. All this goes to show that the Dorr knew perfectly well the position of the boats ahead of her, and the exact maneuver of the Ocklahama, and, notwithstanding, the Dorr attempted to pass to the starboard. Any signaling of the Ocklahama or the Wallula could not have put the Dorr more into actual cognizance of the real situation than she was already, and it was the duty of the Dorr to keep out of the way of these boats. It is manifest that the Dorr was holding to the channel in the ice which the Wallula had broken through. This channel was perhaps .70 feet in width, or thereabouts, and it is probable that the Dorr attempted to pass without breaking through ice outside of it. Elliott says the Dorr was running along against the ice on her starboard when she came into collision with the Ocklahama. There was plenty of room in the river to have passed safely upon either side of the Wallula and Ocklahama. It is quite probable that the Ocklahama was backing slightly across the channel made in the ice at the time, as the Wallula had partially made the curve in the channel to port, and therefore, if the Ocklahama had backed straight astern of the Wallula, it would have thrown her slightly across the channel. But, knowing the situation of these boats and the maneuver of the Ocklahama perfectly, as it seems to have, the Dorr was at fault when it attempted to pass on so narrow a margin, and this fault was the proximate cause of the collision. Whatever omission in observing the rules of navigation there might have been on the part of the Wallula and Ocklahama, it could not in the slightest degree have contributed to the accident, as the Dorr had all the knowledge of the situation that any signals from the two boats could have given her.

The case of The Erandio (D. C.) 163 Fed. 435, is one where the leading boat became stuck fast in the ice, and the one following her was so near that a collision was unavoidable, although proper effort was made to prevent the boats coming together. It was held that neither vessel was at fault. The case is not in point here.

The conclusion is that the Dorr was solely at fault, and is liable for the injuries sustained by the Ocklahama.