### SORENSON v. ALASKA S. S. CO.*

(Circuit Court of Appeals, Ninth Circuit. January 7, 1918.)

No. 3021.

ADMIRALTY ⊕⊃118—APPEAL—CONFLICTING EVIDENCE.

A decree in admiralty, based on sharply conflicting evidence, will not, on appeal, be disturbed; the trial judge having heard the testimony.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

---

⊕⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied February 11, 1918.

Libel by Henry Sorenson against the Alaska Steamship Company, a corporation. From the decree (243 Fed. 280), libelant appeals. Affirmed.

James B. Metcalfe and J. Vernon Metcalfe, both of Seattle, Wash., for appellant.

W. H. Bogle, Carroll B. Graves, F. T. Merritt, and Lawrence Bogle, all of Seattle, Wash., for appellee.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

HUNT, Circuit Judge. Libel in personam for personal injuries received at Seattle by Sorenson, appellant, a seaman on the steamship Victoria, owned by the corporation appellee. The following is a brief summary of the case:

The ship had a lower hold, a between-deck, a steerage deck, and a main deck, with hatches above one another. There was also an orlop or false deck below the between-deck. The ship had loaded a coal cargo, about 1,800 tons in bulk, at Boat Harbor, Canada, and went to Seattle. The coal had been poured into the bottom hold of the ship through the hatch above, and was trimmed off by specially employed trimmers. In the loading the men shoveled the coal to the sides of the ship's lower hold, until the hold was so full that the men left the lower hold and went to the between-decks compartment, when more coal, about 20 tons, was poured down into the between-decks compartment, and a pile was made which reached up in a pyramid to a point above the level of the steerage deck. This was leveled, so as to allow the steerage hatch to be closed before sailing.

Appellant himself testified that he and the crew helped trim the coal; that when the ship was at Seattle the boatswain told him "to go down into the No. 2 hold and trim the coal away, and leave as much space as possible in the fore part of the 'tween-deck," because the ship was going to Bellingham to take in extra cargo; "to trim it up in the wings and in the after part, to do away with it the best way you possibly can." He also said that they were trimming the coal up in the wings, and the after part and wings were full, and there was still a pile of coal left in the hatch, and that he came out in the coamings and cut a hole in the corner in the starboard side of the hatch coaming in the 'tween-deck. The witness continued:

"We were trimming the coal up towards the wings in the after part, and we filled that up. Only we had filled up the coal back of us, and there was still a pile of coal left aft the hatch, and in order to put the hatches on, lower the freight, and stow the freight on the hatches, we had to take this pile away. * * * I cut the hole in the corner, and the best way to get away with the coal was to go down underneath the 'tween-decks. * * * There was lots of room in the sides. I slid down through the hole I cut in the coal pile in the corner of the 'tween-deck hatch."

Plaintiff said that, as it was dark, he called for a lantern; that the flame of the lantern went down, and an explosion immediately followed.

The evidence on behalf of the appellee was to the effect that, when the lower hold was stored and trimmed, there was some additional coal,

15 or 20 tons; that this quantity was put in the 'tween-decks hold; that the trimmers had come out of the lower hold before the additional coal was put in on the 'tween-decks; that the coal made a pyramid; that by putting coal in that way it would go down on top of what was in the lower hold; that the orders to the boatswain were to take six men to trim the coal out in the wings and in the after part of the 'tween-decks, and to go down and trim the coal in the after part and out in the wings, and to keep the fore part clear of the 'tween-decks; that these orders were given to trim the coal on the 'tween-decks out in the wings because the lower hold was full; that there was ample space to put the coal in the 'tween-decks compartment, and that the purpose was to get a space to put some freight in the fore part of the compartment; that no orders were given to trim the coal in the lower hold.

It is unnecessary to state the evidence in greater detail for it is clear enough that the case turned upon the question of what orders were given to the appellant on the morning that he was injured, and what was the fair construction to be put on such orders. If his version had been accepted by the trial court as the correct one, and the appellees had been held guilty of negligence, we would have sustained a decree in his favor. But the only serious question in the case was one of fact, which depended for decision upon conflicting evidence. The judge who tried the case evidently gave the testimony most careful attention. After his first decision he granted a reargument, and again held that all the circumstances confirmed the positive testimony of the appellee that no authority was given to the seamen to disturb the lower hold, and that, as the act of Sorenson in going into the lower hold was purely voluntary, without suggestion on the part of his superiors, there could be no recovery for negligence, and only allowed for maintenance and cure.

This court should not, under such circumstances, reverse the finding. The Hardy, 229 Fed. 985, 144 C. C. A. 267.

The decree is affirmed.