## CARY–DAVIS TUG & BARGE CO. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 12, 1925.)

No. 4623.

1. Towage ⊜➞11(1)—Tug, obeying within reasonable limits order of pilot, is protected, though liable for negligence in executing proper order.

Tug, obeying within reasonable limits orders of pilot in charge of movement, is not chargeable with negligence; but, if damage occurs through negligent manner in which tug executes a proper order, it is liable.

2. Towage ⊜➞12(1)—Steamship held not negligent or premature in sternward movement at time of collision with tug.

Steamship damaged in collision with tug, which was aiding her 'in leaving berth, held not negligent or premature in her sternward movement at time of accident.

3. Towage ⊜➞12(1)—Steamship held not to have negligently delayed acting in aid of tug in irons.

Steamship, damaged by collision with tug, which was aiding her in leaving berth, held not to have negligently delayed casting off hawser and reversing movement, on discovering tug was "in irons."

4. Admiralty ⊜➞118—Finding as to want of negligence of steamship cannot be set aside, unless evidence clearly established such negligence.

District Court's finding of want of negligence on part of steamship contributing to collision with tug cannot be set aside, unless evidence clearly proves such negligence.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Libel in personam by the United States against the Cary-Davis Tug & Barge Company, wherein libelee filed cross-libel. From a decree for the United States, awarding damages and dismissing cross-libel, libelee appeals. Affirmed.

Appellee filed a libel in personam in the District Court for the Western District of Washington, Northern Division, claiming from appellant damages suffered by the United States Shipping Board's vessel, President McKinley, in collision with appellant's tug, Oregon. Appellant filed a cross-libel, charging that the collision was due to appellee's negligence. Appellant's cross-libel was dismissed, and appellee was awarded damages.

W. H. Bogle, Lawrence Bogle, and Frank E. Holman, all of Seattle, Wash., for appellant.

Thos. P. Revelle, U. S. Atty., and Chas. E. Allen, Dist. Counsel U. S. S. B. Emergency Fleet Corporation, both of Seattle, Wash., for the United States.

Before GILBERT, RUDKIN, and McCAMANT, Circuit Judges.

McCAMANT, Circuit Judge. On the 15th of August, 1922, the President McKinley was moored in the West Waterway at Seattle, with her port side to the dock and her bow headed southerly. Appellant was employed to furnish a tug to assist the vessel in leaving her berth and backing into the waters of Elliott Bay. The McKinley was a large vessel, 534 feet long, with a beam of 72 feet. A steam schooner was moored about 25 feet astern of the McKinley on the same side of the Waterway. The navigable channel at this point is about 525 feet wide.

Appellant furnished the tug Oregon, which passed its line to the starboard bits at the stern of the McKinley. The latter vessel was under steam. The tug assisted the McKinley in leaving her berth and backing into the channel. The vessel was then lying athwart the channel. For the purpose of straightening out the McKinley, the tug steamed under a tight hawser to the port side of the steamer. Appellee contends that the tug took a position too far forward. The hawser jammed on the tug's towing machine, the machine ceased to function, and the tug was "in irons." The tug was drawn against the McKinley, hitting the vessel a glancing blow. The collision did some small damage to the McKinley and more considerable damage to the tug. Appellant charges the collision to the fact that the McKinley backed astern prematurely and at an excessive speed. It is also contended that the McKinley was at fault in failing to cast off the towing hawser when the trouble of the tug became apparent, and in failing to relieve the strain on the hawser by reversing her engines and moving forward. Appellee employed Capt. Hanson as a pilot to direct the movement. It satisfactorily appears that Hanson was in charge of the operation. He ordered the tug "to bring the ship off the dock, and then assist her down the Waterway—keep her straight." These were his only instructions, and the master of the tug was permitted to carry them out in his own way.

[1] Appellant contends that "the tug could only be in fault for neglect or failure to follow the pilot's proper orders." This contention is unsound as applied to the

above facts. The tug is protected in obeying within reasonable limits the orders of the pilot who is in charge of the movement; but, if damage occurs through the negligent manner in which the tug executes a proper order, the tug is at fault. In 11 C. J. 1082, 1083, it is said: "Where the officers and crew of the tug participate in the navigation of the vessels, and a collision with another vessel ensues, the tug alone, or both jointly, may be liable for the consequences according to the circumstances, as the one or the other, or both jointly, were either deficient in skill or were culpably inattentive or negligent in the performance of their duties."

[2] The weight of the evidence establishes appellee's contention that in moving to the port side of the McKinley the tug took a position too far forward, and that this was the primary cause of the collision. It is true that the McKinley was moving with a sternway of about three miles an hour, but the master of the tug was aware of this movement and should have governed himself accordingly. It was contemplated that the McKinley would back out of the Waterway and into Elliott Bay on her own power, and after the McKinley was straightened out in the channel the tug's function would be merely to assist in her steerage. The master of the McKinley testifies that the vessel gathered sternway very slowly in comparison with her forward motion; also that her backing power was only 10 per cent. of her forward headway. Under these circumstances, we cannot say that the McKinley was premature or negligent in her sternward movement at the time of the accident.

[3] The evidence is that the tug blew no danger signals when her trouble began. As soon as the pilot observed that the tug was "in irons," he directed that her hawser be cast off. It took several minutes to do this, and by that time the collision had occurred. The pilot also ordered the engines of the McKinley put ahead for the purpose of relieving the strain on the hawser. The order was executed before the collision, but not in time to stop the sternway of the vessel. The order seems to have been given promptly on the pilot's discovery of the danger. The District Court said: "There is no convincing evidence that the McKinley was guilty of any act of omission or commission which contributed to the injuries." With this conclusion we agree.

Appellee failed to produce the engine room log of the McKinley. The record does not show satisfactorily the measures taken by appellant to secure the production of this record. The circumstance is one of suspicion, nevertheless, and in a very close case it might turn the scale against appellee. The Sicilian Prince (D. C.) 128 F. 133, 136.

[4] In the absence of evidence clearly proving the negligence of the McKinley in the respects alleged in the cross-libel, we cannot set aside the conclusions reached by the District Court, which heard the testimony. Benedict on Admiralty (5th Ed.) § 553; Sorenson v. Alaska Steamship Co., 247 F. 294, 296, 159 C. C. A. 388; The Mazatlan (C. C. A.) 287 F. 873, 875; Butler v. Pacific Mail (C. C. A.) 290 F. 806, 807.

The decree is affirmed.