## OLYMPIC SALT WATER CO. v. SHIP-OWNERS' & MERCHANTS' TUG-BOAT CO.

### No. 6208.

Circuit Court of Appeals, Ninth Circuit.
March 9, 1931.

Rehearing Denied April 13, 1931.

Morrison, Hohfeld, Foerster, Shuman & Clark and Forrest A. Cobb, all of San Francisco, Cal., for appellant.

Thacher & Jones, of San Francisco, Cal. (Thomas A. Thacher, Harrison A. Jones, and W. Kevin Casey, all of San Francisco, Cal., of counsel), for appellee.

Before RUDKIN and WILBUR, Circuit Judges, and NORCROSS, District Judge.

## NORCROSS, District Judge.

This is an appeal from a decree of nonliability in favor of appellee as owner of the American tug Sea Ranger, awarded upon its petition for exoneration from and limitation of liability filed in pursuance of the provisions of sections 183–188, 46 USCA. Appellant filed a claim for damages to its wharf and an answer alleging such damage was occasioned by the negligence of said tug and its owner in attempting to tow the disabled steamer Yosemite into San Francisco Bay, on account of which negligence the tow was lost outside the Golden Gate and the wreck came ashore, subsequently colliding with the wharf, causing damages in the alleged sum of $38,000.

The question of negligence is presented in connection with the following main facts:

About 1 o'clock a. m. February 7, 1926, appellee heard that the wooden steam schooner Yosemite was in distress in the vicinity of Point Reyes. At 3:45 a. m. appellee dispatched the tug Sea Ranger to assist or salvage the Yosemite. Four hours later the tug located the then abandoned vessel, which was in a partially submerged condition. A hawser was placed on board and the tug proceeded towards San Francisco with the Yosemite in tow. About 9 p. m. the San Francisco lightship was reached, at which point approximately two-thirds of the towage had

been performed, the destination being Butchertown flats in San Francisco Bay. The bar preceding the main ship channel entrance towards the Golden Gate was crossed at about 12:30 a. m. February 8th. After crossing the bar and proceeding for about two and one-half miles in the main ship channel entrance, the Yosemite, or her after end, sank and touched bottom. About 3:30 a. m. the tug parted the hawser. The sunken vessel was left in the channel and the Sea Ranger returned to San Francisco. At about 7:40 a. m. of the same day, February 8th, the main portion of the hull of the Yosemite was found by the beach patrol of the Coast Guard ashore about one-quarter of a mile south of appellant's wharf. The vessel remained stranded at that point on the ocean beach for four days and until February 12th, when by reason of a severe storm the hulk was lifted off the beach and floated north, striking and injuring appellant's wharf.

The court below found:

"That the petitioner's tug 'Sea Ranger' was not negligent in determining to tow the steamer 'Yosemite' into San Francisco Bay through the Golden Gate; that there was no negligence in selecting the main ship channel for this purpose; that there was no negligence in attempting the passage of this channel under the conditions of weather and tide then prevailing; that there was no negligence in the conduct of the navigation of tug and tow; and that the grounding and breaking away of the 'Yosemite' was not due to any negligence on the part of the 'Sea Ranger.'"

Counsel for appellant contend that practically all the testimony on the issue of negligence is by deposition, including all of appellant's testimony, and being an admiralty appeal and hence a trial de novo, this court is in as good a position as the trial court to determine such issue. The testimony of Captain Genereaux, who, at the time of the injury, was in command of the Sea Ranger, was taken upon the part of appellee by deposition. The testimony of Captain Clark, who was also at the time in the employ of appellee and on board the Sea Ranger, was taken by deposition upon the part of appellant. It is the contention that the testimony of Mate Gallagher of the Sea Ranger and that of Captain Johnson, who at the time was Warrant Officer in the Coast Guard and in charge of the Point Bonita Coast Guard station, "contribute nothing to the facts"; that "they were used especially as experts"; that "it is on the testimony of Captain Genereaux and

Captain Clark alone that the facts bearing on the issue of negligence must be determined."

The contention that the facts bearing on the issue of negligence must be determined alone from the depositions of Captains Genereaux and Clark is not supported by the record. Captain Johnson, who had been in the Coast Guard Service on the Pacific Coast for thirty-six years, fifteen of which had been spent in and about the Bay of San Francisco, was not only qualified as an expert, but was a witness to most of the occurrences from the time the towage started. He was aboard the tug at the time it crossed the bar and at the time it parted the hawser. He then returned to his power launch, which had been accompanying the tow, stating he would stand by to warn traffic of danger.

■ This case is not within the rule applied by this court in the case of The Santa Rita, 176 F. 890, 893, 30 L. R. A. (N. S.) 1210, where it was observed "that libelant's principal witnesses, * * * testified by depositions," but comes within the general rule referred to in the opinion in that case and frequently applied by this court in other cases, to the effect that the findings of the trial court upon conflicting testimony should not be disturbed except for manifest error. Sorenson v. Alaska S. S. Co. (C. C. A.) 247 F. 294; The Beaver (C. C. A.) 253 F. 312; The Hardy (C. C. A.) 229 F. 985; The Yucatan (C. C. A.) 226 F. 437.

■ Error is assigned in the failure of the court to find that the petitioner "negligently abandoned the 'Yosemite' without attempting to secure her or to anchor her, or to prevent her from breaking up."

The court below found from the evidence "that the grounding and breaking away of the 'Yosemite' was not due to any negligence on the part of the 'Sea Ranger.'" There is no showing that the Sea Ranger or its owners failed to perform any duty required subsequent to parting the hawser. The Yosemite sank, and further towage was out of the question. The officer in charge of the Coast Guard station was on the scene, and stated he would stand by in his power launch to warn any traffic of danger from the sunken vessel. The next morning the main portion of the hull of the sunken vessel was found by the Coast Guard on shore. The vessel was a wreck. The following day the owners of the Yosemite abandoned her and surrendered the vessel's documents at the United States Custom House at San Francisco. After abandonment the wreck was subject to removal by the United States. 33 USCA § 409.

In the case of Red Star Towing & Transportation Co. v. Woodburn (C. C. A.) 18 F.(2d) 77, 79, the court said:

"A tugowner is no more responsible for the eventual collision, when he himself suffers from his earlier fault, than when another is the victim. The statute establishes a new duty arising after the sinking, and demanding as its condition nothing but the fact and notice of it to the wreck owner. Though the tug be a guilty party to the original mishap, the duty is not ordinarily upon her to provide against further loss; the statute imposes the duty upon the owner alone, and absolves the tug from subsequent consequences, which conceivably might otherwise be thought to be the proximate result of her original fault."

See, also, the case of The Anna M. Fahy (C. C. A.) 153 F. 866.

Decree affirmed.