## THE GOVERNOR.

### HASTORF v. THE GOVERNOR.

#### (District Court, S. D. New York. December 11, 1896.)

TUG AND TOW—MOORING IN EXPOSED PLACE—DUTY TO WATCH FOR CHANGES OF WIND.

The tug G., having in tow a scow to be taken to sea, and being obliged to put back on the approach of a southeast gale, moored the tow outside of Atlantic Basin, which was safe from a southeasterly gale, but unsafe in high westerly winds. During the night the wind shifted to the westward, and the libelant's boat was damaged by pounding: *Held*, that the tug was in fault either for not taking the tow inside the basin, or else for not maintaining a sufficient watch during the night, with help at hand sufficient to remove the tow in time to prevent damage, upon any change of wind to the westward, which was a change to be reasonably anticipated.

Goodrich, Deady & Goodrich, for libelant.
Macklin, Cushman & Adams, for claimant.

BROWN, District Judge. In the evening of December 30, 1895, the libelant's scow Aurora, loaded with garbage, was taken in tow in the East river by the steam tug Governor, with other boats to be taken out to sea for the purpose of dumping. After getting round Governor's Island the weather and water was so rough in a southeast gale, that the Governor turned about and landed her tow along the bulkhead forming the outside of the Atlantic Basin. During the night the wind shifted to the westward, and the libelant's boat was damaged by pounding in that position before the boats were moved to the interior of the basin; and the above libel was filed for this damage.

The place where the tow was moored was sheltered from a southeasterly gale; but it was exposed to the effects of westerly or northwesterly winds; and in any wind to the west of south, the place was not a safe place for such a tow. There would have been no difficulty in taking the scows inside of the Atlantic Basin at the time they were moored outside; nor during several hours succeeding. The scow was without any fault; and it was at the risk of the tug that she moored the tow in a place exposed to westerly winds. After mooring them in that situation, it was specially the tug's duty to take note of any changes of wind that might prove injurious. Southwesterly gales are usually shorter than the northeasterly gales; and it is a very common thing for a southeasterly gale to shift through the southward to the westward. In the present case the testimony shows that this change was not sudden, but quite gradual, and that the wind after shifting to the southward

so remained for an hour or two, before it got sufficiently to the westward to become dangerous. The tug took no measures to look after the tow during this interval, nor until the damage had begun, and then she was not herself able to handle the tow alone, and had to go up to Rutger street for a helper; and before the two could get the tow into the basin, the damage complained of was done. It was, in brief, the duty of the tug either to moor the tow in a safe place for the entire night, as against changes of wind that might reasonably be anticipated, or else to keep watch of the changes in the wind, and to begin the transfer of the tow to a safe place in time to avert damage.

Decree for the libelant, with costs.