## THE DOLBADARN CASTLE.

(Circuit Court of Appeals, Ninth Circuit. May 3, 1915.)

No. 2430.

1. SHIPPING ☞132—DAMAGE TO CARGO—LIABILITY OF VESSEL—BURDEN OF PROOF.

Under a bill of lading exempting the ship from liability for "leakage, breakage, loss or damage by heat, sweat, rust or decay, unless occasioned by improper stowage," where it is shown that the goods were damaged by sweat or rust, the burden rests upon libelant to prove that such sweat or rust was the result of improper stowage; otherwise the ship is exonerated.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. ☞132.]

2. ADMIRALTY ☞118—REVIEW ON APPEAL—FINDINGS OF FACT.

In admiralty, findings of fact made by the trial court will not be disturbed by an appellate court, unless it clearly appears that there was error.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 758–775, 794; Dec. Dig. ☞118.]

3. SHIPPING ☞132—DAMAGE TO CARGO—LIABILITY OF VESSEL.

Evidence considered in a suit for damage to cargo, and *held* to sustain the findings of the trial court that the damage was not due to improper stowage, but was caused by sea water which entered because of the straining of the ship and the opening of the deck seams during unusually violent storms, which constituted a peril of the sea, or to other causes within the exemptions in the bills of lading.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. ☞132.]

Appeal from the District Court of the United States for the First Division of the Northern District of California; M. T. Dooling, Judge.

Suit in admiralty by Parrott & Co., a corporation, against the bark Dolbadarn Castle, the Dolbadarn Castle Shipping Company, Limited, claimant. Decree for respondent (212 Fed. 565), and libelant appeals. Affirmed.

Louis T. Hengstler and Andros & Hengstler, all of San Francisco, Cal., for libelant and appellant.

Ira S. Lillick, of San Francisco, Cal., for appellee.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. The appellant brought a libel against the Dolbadarn Castle, to recover for damages to certain freight shipped at Rotterdam to be transported to San Francisco. The libel alleged that in February, 1910, the appellant shipped on said bark in good order and condition, 2,023 sheets or steel plates, and 2,775 barrels of cement, and that the said goods were not delivered in like good order and condition, but were damaged while they were on board and in the custody of the bark. The claimant, the appellee herein,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

alleged as an affirmative defense that the loss and damage referred to in the libel was caused solely and entirely by the force of the wind and waves and perils of the sea, which, notwithstanding that the bark was seaworthy and the goods were properly stowed, so injured and strained the vessel that the sea water was forced through her decks and into the cargo referred to, wetting and damaging the same, that the master and crew took every precaution for the protection of the cargo, and that the damage was caused by the act of God and without fault on their part, or insufficiency on the part of the vessel. From a decree dismissing the libel, the libelant appeals.

[1] It is contended, first, that the court below erred in ruling that on the issues raised by the pleadings, the burden of showing improper stowage, was upon the libelant. What the court held was that upon the evidence, the cargo was damaged either by sea water or by moisture resulting from sweat, that as one of the provisions of the bills of lading was that the ship should not be liable for damage resulting from the act of God or perils of the sea, the vessel was not liable for damage occasioned by sea water, because the evidence was that the presence of sea water in the hold had been the result of unusual storms and extraordinarily heavy weather, and that as one of the exceptions in the bills of lading was that the ship "is not liable for leakage, breakage, loss or damage by heat, sweat, rust or decay, unless occasioned by improper stowage," the vessel was not liable for the damage from sweat or rust, unless the libelant proved that such sweat or rust was the result of improper stowage. As to the testimony tending to show that the moisture which caused the caking of the cement and the rusting and pitting of the plates was the result of sweat arising from a cargo of coke, the court said:

"If it be conceded that this fact is established, the burden of proving that the damage from such sweat was occasioned by improper stowage is upon the libelant. For once the damage is brought within the exceptions of the bill of lading, the ship is exonerated, unless the libelant show that notwithstanding such exception the ship is liable because of some negligence; in this case, the negligence of improper stowage."

The case of The Folmina, 212 U. S. 354, 29 Sup. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748, cited by the appellant, does not support its contention. In that case it was held that when goods, received in good order on board a vessel under a contract to deliver them at the termination of the voyage in like good order and condition, are damaged on the voyage, the burden of proof is on the carrier to show that the damage was occasioned by a peril for which it is not responsible, and that merely proving that the damage was done by sea water does not establish that the damage was caused by peril of the sea, within the exception of the bill of lading, and that it is the duty of the carrier to sustain the burden of proof by showing a connection between damage by the sea water and the exception against sea perils. In the case at bar that requirement of proof was met by evidence that sea water reached the cargo, and evidence upon which the court found that whatever sea water entered did so by reason of the fact that the ship became strained by the unusual storms and the heavy seas encountered by her. In the Folmina Case the court cited, among other

cases, the decision of this court in the Henry B. Hyde, 90 Fed. 114, 32 C. C. A. 534, in which it was held that where a libel for injury to goods in shipment alleges that the injury consisted of breakage, the case is prima facie within an exception in the bill of lading against liability for loss or injury from breakage, and that the burden rests on the libelant to prove that the breakage occurred through the negligence of the carrier. That rule, sustained by abundant authority, was the rule which the court below applied in holding that the burden of proof that the damage from sweat was occasioned by improper stowage was upon the libelant. See The Koranna (D. C.) 214 Fed. 172; The Königin Luise, 185 Fed. 478, 107 C. C. A. 578; The Good Hope, 197 Fed. 149, 116 C. C. A. 573; The Patria, 132 Fed. 971, 68 C. C. A. 397; The St. Quentin, 162 Fed. 883, 89 C. C. A. 573; The Baralong, 172 Fed. 220, 97 C. C. A. 24.

[2, 3] It is contended that the evidence failed to show that the damage was caused by perils of the sea. In considering this contention it is to be observed that all the testimony of the appellant's witnesses was heard in open court, and that the only testimony offered on deposition was that of the officers of the bark. The well-settled rule is applicable that the findings of fact of the trial court will not be disturbed in this court unless it clearly appears that there was error. Whitney v. Olsen, 108 Fed. 292, 47 C. C. A. 331; Perriam v. Pacific Coast Co., 133 Fed. 140, 66 C. C. A. 206; The Bailey Gatzert, 179 Fed. 44, 102 C. C. A. 612. But the appellant relies upon the fact that Stewart, who appeared as an expert witness for the appellee, testified that the pitting of the steel plates was, "in a large measure, due to salt water," and from that it argues that the witness admitted that a portion of the damage was from causes other than the perils of the sea. We do not think the language quoted from Stewart's testimony should be given the effect which the appellant attributes to it. He was a surveyor for Lloyds Register, and upon the appellee's ascertaining that a claim would be made for damages, he was employed as an expert to examine the cargo. He made tests with nitrate of silver on the steel plates, and he testified:

"My examination of the steel plates convinced me that the pitting and deterioration was in a large measure due to salt water."

On his cross-examination he was not asked whether any of the deterioration was the result of other causes, and his testimony seems to have been accepted as a complete explanation of the damage to the plates by pitting. On his redirect examination he stated that there was no question in his mind as to the cause of the pitting on the steel at the time when he made his test, that it was salt, and it is shown that he reported to the owner at that time that in his opinion the damage was due to salt water. In addition to his testimony, there was positive and direct evidence that sea water actually reached the steel plates. Capt. Baxter testified to the extremely heavy weather experienced on the voyage. He said that a monstrous sea came over the bow that swept everything, filled the decks fore and aft; that the decks were strained and leaking in places; that he could see traces of salt water running down the tanks, and on the edges of the plates that were piled up next

to the tanks, and that it had made its way over the plates; and that the water entered through the decks during the storm. He testified that the damage to the steel plates and to the cement came from stress of weather, the ship laboring and straining and leaking through the deck, and down the main ventilator. Owen, the mate, gave similar testimony.

It is claimed also that there was no evidence sufficient to show that the damage to the cement was caused by peril of the sea, and that the testimony of Wallace, who was called as a witness for the appellee, furnished no evidence as to the cause of the caking of the cement. Wallace was a marine surveyor and the port warden of the port of San Francisco. He examined the cement before any of the cargo was discharged. He testified that a lot of the top tier of barrels of cement was caked, that when he tested the barrels he found that they showed salt water very plainly, and that there was very visible evidence of the seepage of salt water through the decks, especially alongside the mast and the mast partners. It is true that there is no evidence that the witness made an examination of the contents of the barrels further than what he might ascertain from their external appearance, and by tapping the barrels with a hammer to see if the cement was caked. But the fact that he discovered evidence of salt water, and that the upper tier of barrels, which was more exposed to the sea water than the lower tiers, was much more seriously damaged than the latter, tends to show that the whole damage was occasioned by sea water.

The appellant refers to the finding of the court below that the damage both to the cement and to the steel plates was caused by some form of moisture; that if the moisture was sea water it was caused by the perils of the sea, and therefore excusable, and if it was caused by sweat the ship was liable only if the libelant could show negligence, and it contends that since the appellee in its answer to the libel alleged that all the loss and damage was caused by perils of the sea, it must be held to that allegation, and it has therefore no defense as to damage which may have been caused by sweat. We do not think the answer has the effect so to narrow the issues. It is alleged therein that under the contracts of affreightment it was agreed that the ship should not be liable for "leakage, breakage, loss or damage by heat, sweat, rust or decay unless occasioned by improper stowage." If the appellee was in error in believing that all the damage was caused by perils of the sea, and in so alleging in the answer, it should not be held that it is thereby precluded from availing itself of any other defense which the answer contains, such as the provision just quoted from the bills of lading.

But the appellant contends that it has sustained the burden of proof of improper stowage, and that by the preponderance of the evidence it is shown that the appellee negligently failed to segregate by sufficient bulkheads the steel and cement from the coke which was the greater portion of the cargo, and that the coke, by reason of its capacity to absorb moisture and to throw it off in the form of vapor, was the effective cause of the greater portion of the damage which was done. No fault is to be imputed to the appellee for bringing coke as a portion of

its cargo, for the vessel was under charter to the appellant, and the charterer designated the cargo which was to be carried. There was evidence, moreover, that the bulkheads were constructed in a manner approved by prudent persons versed in such matters, and that it conformed to existing knowledge and experience. The coke which was the principal portion of the cargo, was stowed in the fore and aft parts of the bark, and the steel and cement were carried amidships. The bulkheads were made of upright stanchions upon which boards were nailed athwartship. The boards were not dovetailed, but they were placed closely together, and on the side next the coke they were lined with dunnage mats. According to some of the witnesses, daylight could not be seen through the bulkheads. There was other testimony that there were cracks between the boards. Upon this conflicting testimony the court below found that the bulkheads were better for the purpose intended than those generally in use at that time, and concluded that the appellant had not sustained the burden of showing improper stowage. We find no ground for disturbing the findings of the court below.

The decree is affirmed.