HERMAN et al. v. COMPAGNIE GÉNÉRALE TRANSATLANTIQUE.

(Circuit Court of Appeals, Second Circuit.    April 10, 1917.)

No. 211.

1. Shipping ⬤137—Damage to Cargo—Harter Act.
   In the absence of affirmative evidence of the exercise of diligence to make a vessel seaworthy at the beginning of the voyage, the owner cannot invoke the provisions of Harter Act Feb. 13, 1893, c. 105, § 3, 27 Stat. 445 (Comp. St. 1916, § 8031), as a protection against liability for cargo damage.
   [Ed. Note.—For other cases, see Shipping, Cent. Dig. § 492.]

2. Shipping ⬤141(3)—Damage to Cargo—Exceptions in Bills of Lading.
   An exception in bills of lading of liability for damage from perils of the sea does not protect the ship or owner from liability for damage to cargo from sea water, in the absence of evidence to show what caused the entry of the water; the burden resting upon the carrier to bring the case within the exception.
   [Ed. Note.—For other cases, see Shipping, Cent. Dig. § 498.]

3. Shipping ⬤141(3)—Damage to Cargo—Liability of Ship.
   The presence in one hold of a steamship of several tons of sea water, by which cargo was damaged, raises a presumption of unseaworthiness or of negligence, and, in the absence of an explanation of how the water entered, the ship is not protected from liability, even by a specific exception against wetting by sea water in the bills of lading.
   [Ed. Note.—For other cases, see Shipping, Cent. Dig. § 498.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Max Herman and others against the Compagnie Générale Transatlantique.    Decree for libelants, and respondent appeals.    Affirmed.

The action is in personam against the owners of the steamship Caroline, upon which vessel as a common carrier libelants (or their consignors) shipped certain goods at Havre, France, for transportation to New York. The goods in question consisted of 23 cases of millinery, 131 bales of rags, and 30 cases of woolen goods. On arrival at New York 7 cases of millinery, 53 bales of rags, and 17 cases of woolens were damaged by sea water. By uncontradicted evidence each bale of rags weighed about 500 pounds when shipped; on arrival the injured bales had soaked up and retained an average of about 150 pounds of water apiece, i. e., there was positive proof that the rags alone had absorbed almost four tons of sea water. The 7 cases of millinery were described as "entirely wet," and the balance of the consignment "more or less damaged"; but the quantity of water affecting these goods did not more specifically appear. The condition of the woolens was not further proved than to show that they were wet, with resulting "very big damages." All the injured goods were in the same hold.

There was no evidence of any inspection or survey of the Caroline immediately or very soon before the voyage upon which this damage occurred. The master testified that his vessel was "brand new" and a very solid ship; that he had had bad weather on the voyage, but could not "recollect the details." While the master thought that the weather would "be sufficient source for damaged cargo," he admitted that he had "frequently encountered such weather without having cargo damaged." The bill of lading under which libelants' goods were shipped contained an exception against losses "resulting from  *  *  *  occurrences of seas, rivers or navigation," and a further

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

specific exception against "wetting by fresh water or by sea water." The answer pleaded the Harter Act, and relied upon the hereinabove specified exceptions of the bill.

Nolan Bros., of New York City (Joseph P. Nolan, of New York City, of counsel), for appellant.

Harrington, Bigham & Englar, of New York City (D. Roger Englar, of New York City, on the brief), for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] How or why the sea water immediately causing this damage entered the hold remains unknown. To this case 'the Harter Act has no application, because there is no affirmative evidence showing that the Caroline was seaworthy at the beginning of the voyage, or even at a time approximately near its beginning. Such proof cannot be supplied by inferences or presumption. Bradley v. Lehigh Valley R. R. Co., 153 Fed. at 352, 82 C. C. A. 426; The Wildcroft, 201 U. S. 378, 26 Sup. Ct. 467, 50 L. Ed. 794.[1]

[2] The phrase "occurrences of seas, rivers or navigation" is a translation from the French bill of lading. We take it as equivalent to the familiar exception against "peril of the seas." So far as the defense based upon this clause is concerned, there is "a failure of proof to determine whether 'the presence of the sea water was occasioned by an accident of the sea, by negligence or by any other cause." Therefore, as the burden of showing that "the damage arose from an excepted cause is upon the carrier," and no such showing has been made, the defense fails, under The Folmina, 212 U. S. at 363, 29 Sup. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748.

[3] There remains the specific exception against wetting by sea water. It was admitted that, when cargo received in good condition is delivered in bad order, a presumption of negligence arises, casting upon the carrier the burden of showing that the injury arose from an excepted cause; if the carrier does this, the shipper must take up the burden and prove negligence in order to overcome the lawful exception of the bill. This appellant's case is thought to rest upon our decisions in The Konigin Luise, 185 Fed. 478, 107 C. C. A. 578, The St. Quentin, 162 Fed. 883, 89 C. C. A. 573, and The Baralong, 172 Fed. 220, 97 C. C. A. 24. See, also, The Dolbadarn Castle, 222 Fed. 838, 138 C. C. A. 264. The citations relate to exceptions against leakage, breakage, heat, and sweat, and substantially hold that, where the injury is within a good exception, it does not constitute proof of the carrier's negligence to show (or rather argue) that the damage was of such an extraordinary and unusual nature that it could not have occurred without negligence.

---

[1] Appellants' brief contains a document said to have been inadvertently omitted from the apostles, which is submitted as proving due diligence. It is the Caroline's license, and contains specifications of her engines, etc. We may presume that inspection preceded license, but that does not make the document itself evidence of either due diligence or seaworthiness. It is evidence only of what it purports to show, viz. that the ship was lawfully entitled to sail under the French flag.

From these rulings we are not disposed to depart; but to this case they bear a remote relation.

Ships are especially designed to exclude sea water. It cannot ordinarily gain access to cargo unless the vessel is leaky in good weather, or becomes so (even temporarily) by stress of weather. The presence of sea water in cargo space may be of itself enough to destroy the presumption of seaworthiness which flows from the implied warranty in respect thereof imputed to every ship acting as a common carrier. The question (like so many others) is one of degree, for the warranty of seaworthiness goes as far as to require fitness for the particular business or businesses in which the ship engages; she may be seaworthy as to one sort of cargo and unseaworthy as to another. The Southwark, 191 U. S. 11, 24 Sup. Ct. 1, 48 L. Ed. 65.

Inasmuch, therefore, as an exception against peril of the seas does not relieve the carrier of the burden of showing where sea water in cargo came from and why it got into the hold (The Folmina, supra), and leaves the presumption of unseaworthiness caused by its presence undisturbed, it must follow that, even as against a specific exception covering any wetting by sea water (as here), the appearance of tons of such water in a single hold is quite sufficient to show negligence. The ship that will not keep out the sea stands in a very different category from one on which the cargo sweats, leaks, breaks, or melts. On such ships the visible and immediate cause of injury bears no necessary or obvious relation to the structure or seaworthiness of the vessel. As against breakage, heat, etc., the shipper has no right to rely upon such a warranty as that of seaworthiness, which rests on and arises from the reason for constructing all sea-going vessels, in the shape and manner long universal.

We therefore hold that a specific exception against wetting by sea water does not furnish a protection to the ship under the circumstances here shown: (1) Because the unexplained presence of sea water in such large quantities makes out a prima facie case of unseaworthiness, sufficient to put upon the carrier a burden of explanation which has not been met; and (2) because there is an inherent difference between the duty of a shipowner to avoid breakage (or the like) of cargo, and the duty to keep his hold free of sea water, which difference makes it proper to treat the mere presence of large quantities of salt water in the hold as proof of a negligence that is not shown by the existence (e. g.) of unusual heat in the same hold.

It was said in The Konigin Luise, supra, that The Folmina would not have been sent by certificate from this to the Supreme Court, had there been such an exception as is here presented, because the damage would have been specifically within it. That remark has been misunderstood. The exception put a duty of explanation on the shipper. No other inference should be drawn from the words of Lacombe, J., and we so hold. The question now is whether the evidence recited fulfills the shipper's duty; we hold it does.

A construction less stringent than the foregoing would be opposed to a long course of decision. Every exception in a bill of lading must receive a construction not "nullifying and destroying the implied obli-

gation of the shipowner to provide a ship proper for the performance of the duty undertaken." The Carib Prince, 170 U. S. at 659, 18 Sup. Ct. 753, 42 L. Ed. 1181, citing Steel v. State Line S. S. Co.; L. R. 3 App. Cas. 72. Taken literally, this exception against any wetting by sea water would be good against the flooding of a hold by the breakdown of any one of a score of structural pieces, and would amount to abnegation of the carrier's duty to furnish a seaworthy vessel and use due diligence to keep her so. An instance of such injury is shown in The Citta di Palermo, 226 Fed. 529, 141 C. C. A. 285. That case went off on another point, but the facts are instructive.

There may be instances of infrequent sea water damage, to which this exception might reasonably apply. Cf. The Ontario, 115 Fed. 769, 53 C. C. A. 199, where a ballast tank leaked. Whether it could ever attach where the common exception against peril of the seas would not be equally available may be doubted, but is not decided. All that is now held is that this exception cannot be construed to relieve respondent, without at the same time relieving from the consequences of unseaworthiness, and refusing to credit plain and persuasive evidence of negligence.

The decree below is affirmed, with interest and costs.