## THE MAHANOY.

(Circuit Court of Appeals, Second Circuit.   April 16, 1919.)

No. 225.

COLLISION ☞96—BOAT LYING IN SLIP—TUG WITH TOW.

Evidence *held* to sustain the claim of libelant that respondent tug or her tow, which she was maneuvering into place in a slip, came into collision with libelant's canal boat, which was being discharged on a pier in the slip.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty for collision by Willis E. Benham against the steam tug Mahanoy; the Lehigh Valley Transportation Company, claimant.   Decree for respondent, and libelant appeals.   Reversed.

Foley & Martin, of New York City (James A. Martin and George V. A. McCloskey, both of New York City, of counsel), for appellant.

Harrington, Bigham & Englar, of New York City (Anthony V. Lynch, Jr., of New York City, of counsel), for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge.   This appellant seeks to recover for damages sustained by the canal boat Sarah E. Thatcher while lying moored at the south side of the pier off Fifth street, Manhattan, East River.   On December 30, 1916, the damage occurred.   On that day, between 11 and 12 o'clock noon, the steam tug Mahanoy and her tow, the barge J. J. Humphrey, came into the slip.   The barge was landed outside of some boats close by at the bulkhead.   A question of fact is presented as to whether or not a collision occurred between this tow and the Thatcher.   The District Judge, in an opinion delivered orally, dismissed the libel and stated:

"I am unable to reach a conclusion upon the preponderance of the evidence, and therefore hold that the libelant has not sustained the burden of proving damage by the fault of this tug."

We fully recognize the rule, often enunciated in this court, that the trial judge, in admiralty, has the advantage of seeing and hearing the witnesses, and that this appellate court is reluctant to disturb his conclusion on the facts.   He has the opportunity of seeing and hearing the witnesses.   The W. H. Flannery, 249 Fed. 349, 161 C. C. A. 357; The Beaver, 253 Fed. 312, —— C. C. A. ——.   But upon appeal, where this court may examine the weight of the evidence, we feel that upon this proof the libelant has borne the burden of proving damage as claim-

ed. We feel obliged thus to examine the evidence, since the District Judge decided that he was unable to reach a conclusion upon a preponderance of the evidence. In his behalf the appellant called the stevedore who had charge of unloading the Thatcher, and who testified that between 11 a. m. and 12 noon, there was "an awful jar," which knocked him and his partner off their feet while they were stooping to make up a draft of lumber. After this, the witness went half way up the ladder and looked out of the side of the boat and saw the tug, which he identified as the Mahanoy, backing away. The blow appeared to the witness to come amidships, a point from which the Mahanoy was backing. There was damage to the planks at this point. An employé of the stevedore stated that "all of a sudden something crashed into the side of the boat and knocked him over into the other side." He, too, saw the Mahanoy backing away from the Thatcher. He stated there were no other boats moving alongside. The men on the Thatcher shouted to the Mahanoy.

Capt. Kerwin of the Mahanoy admits that they called to him. Another longshoreman, working on the deck, saw the tow coming in towing the canal boat and felt the bump. He was standing at amidships and the contact was forward of him. He did not know whether it was the tugboat or the coalboat which struck. Another employé of the stevedore, who was standing at amidships on the deck, saw the tugboat and saw the collision, but could not tell which of the two struck the Thatcher.

The appellant's wife testified that she looked out after the crash and saw the tug and her tow. She describes it as an "awful crash," and describes a second bump, which was not quite so bad as the first. She heard the man call out to the captain of the Mahanoy, and saw the Mahanoy's deckhand go on board the Thatcher to examine as to the damage. This deckhand admitted that there was damage to the side of the Thatcher. The appellant testified that he was not on the boat at the time of the collision, but came after, and saw a fresh break on the port side, about 25 or 30 feet from the bow.

Opposed to this testimony is that of Capt. Kerwin of the Mahanoy, who denied the collision, but who admitted that, when he started to back out of the slip, men on the Thatcher called to him to look at the damage he had done to her, and further that they showed him a broken plank about 10 feet back from the bow on the port side. His explanation of his maneuvers and backing the boat out is consistent with the claim of the appellant that a collision actually occurred. He said that, when his tug came into the slip, her bow was pointing slightly to the southward, with her stern to the northward, and stern a little up river. The Humphrey put her bow line on the starboard clip of the outside boat, which was a little aft of the blow. After loosening the stern line, he started to back before loosening the other lines, namely, the towing strap and towline. This required his backing up to get the strap off. He thus gave a swing of the Humphrey to land her alongside of the three moored barges.

Under these circumstances, the Humphrey could come in contact with the Thatcher. If the Humphrey's stern did not at first swing

along the outside boat, it is fair to assume that there was something in the way, and this was probable, because the swing brought her into contact with the Mahanoy. The master of the Humphrey testified, as did Thompson, the Mahanoy's oiler, that there was "talk of an accident" outside on the tug.

We think that the testimony offered in behalf of the appellant was sufficiently strong evidence that a collision took place. The surrounding circumstances and the statements made by the appellee's witnesses in some measure corroborate the claim of the appellant. While it is true that there is denial of a collision, there is the fact that a collision was claimed at the time, and a man was immediately sent on board the Thatcher to make an examination of the damage. What caused the fresh break? It was proven that there were no other vessels in the vicinity at the time, or endeavoring to get in or out of the slip. There was the crash, severe enough to cause the workmen to lose their equilibrium. We must accept this as evidence which ordinarily should prevail over strictly negative evidence. Stitt v. Huidekoper, 84 U. S. (17 Wall.) 385, 21 L. Ed. 644. We are of the opinion that the appellant has sustained the burden upon him to prove the claim.

Decree reversed.