### THE MAZATLAN.

### CONRAD et al. v. CALIFORNIA & M. S. S. CO. et al.

(Circuit Court of Appeals, Ninth Circuit. February 26, 1923. Rehearing Denied April 16, 1923.)

No. 3929.

1. **Admiralty ☞118—Trial court's findings not disturbed, except for manifest error.**

In a libel by shippers for loss of goods, an appellate court will not disturb the findings of the trial court, except for manifest error.

2. **Shipping ☞132(5)—Shippers' supervision of loading of cargo held cause of loss by deterioration.**

Evidence held to show that shippers' supervision of, and erroneous direction for, the loading and stowing of a cargo of bananas, was the direct

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and proximate cause of the loss of the bananas by deterioration during transportation.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Benjamin F. Bledsoe, Judge.

Libel by Julius Conrad and others against the Mazatlan and the owner thereof, the California & Mexico Steamship Company. From a decree dismissing the libel, libelants appeal. Affirmed.

James Donovan, of Los Angeles, Cal. (M. M. Lyter, of Los Angeles, Cal., of counsel), for appellants.

Edward J. McCutchen, Farnham P. Griffiths, and McCutchen, Olney, Willard, Mannon & Greene, all of San Francisco, Cal., and Robert M. Clark, of Los Angeles, Cal., for appellees.

Before GILBERT, MORROW, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. Early in the month of February, 1921, the appellants entered into negotiations with the respondent California & Mexico Steamship Company for the transportation of a cargo of bananas on the vessel Mazatlan from the port of Salina Cruz, Mexico, to the port of San Pedro, Cal. In these negotiations the appellants were represented by the appellant Grande, and the respondent steamship company by one McMillan, the general manager. It was finally agreed between the parties that the steamship company would transport the cargo between the two ports at the rate or hire of 50 cents per bunch, the weight of the bunches being estimated at 50 pounds each. The quantity to be thus transported was not then fixed or agreed upon, but it was agreed that the appellants would furnish or tender a minimum cargo, of 250 tons, and that the freight on such minimum cargo, amounting to $5,000, would be paid in advance, or satisfactorily guaranteed.

Pursuant to this agreement the vessel arrived at the port of Salina Cruz on the 23d day of April, 1921, and timely notice of the date of arrival was given in advance. The cutting of bananas commenced on April 20th, at or near El Hule, a distance of 165 miles from Salina Cruz, under the direction and supervision of the appellant Grande. Ten cars were shipped from that point to Salina Cruz on April 21st, a like number on April 22d, and 13 cars on April 24th, making 33 cars in all, containing 15,650 bunches, or approximately 400 tons. Loading of the vessel commenced on the morning of April 25th, and was completed on the afternoon of April 26th. The loading and stowing of the cargo was under the direction and supervision of the appellant Grande, pursuant to the express understanding and agreement of the parties.

The vessel contained three holds in all. Hold No. 3 was equipped with a refrigeration system, and holds Nos. 1 and 2 with a system of ventilation. Hold No. 3 had a capacity of between 11,000 and 12,000 cubic feet, and the capacity of each of the other holds was approximately the same. According to the allegations of the libel, 300 tons were stowed in hold No. 3, 75 tons in hold No. 2, 25 tons in hold No.

1, and the balance on deck; but these figures must be inaccurate, as the entire cargo contained a less tonnage than this. The bananas were piled in the holds of the ship, one bunch upon another, until in hold No. 3 the pile attained a height of about nine feet. The vessel left port on the afternoon of April 26th. Soon thereafter the bananas began to deteriorate very rapidly, until on April 30th the master decided that the cargo could not be saved, and put into port at Mazatlan, where a portion of the cargo, to the value of about $300 was salvaged, and the remainder jettisoned.

The present libel was thereafter filed to recover damages for the loss. The court below found that the loss was caused by the overripe and bruised condition of the bananas when placed on board the ship, and by the improper manner in which the cargo was stowed, that the appellants alone were responsible for these conditions, and dismissed the libel. From the decree of dismissal the present appeal is prosecuted.

[1] If these findings of the court are sustained by the testimony, it becomes unnecessary to consider many incidental questions presented by the record and discussed by counsel on the argument. In this class of cases the rule is well settled that an appellate court will not disturb the findings of the trial court, except for manifest error. The Lyra (D. C.) 231 Fed. 250; The Beaver, 253 Fed. 312, 165 C. C. A. 94; United S. S. Co. v. Haskins, 181 Fed. 962, 104 C. C. A. 426; Peterson v. Larsen, 177 Fed. 617, 101 C. C. A. 243; Reed v. Weule, 176 Fed. 660, 100 C. C. A. 212.

[2] We find no such error in the record before us. It appears from the testimony that the cargo was improperly stowed under the direction and supervision of the appellants, and that this fact of itself was the direct and proximate cause of the loss. This was practically conceded on the argument, but the appellants seek to escape responsibility for the manner of stowage upon two grounds: First, because the steamship company failed and refused to furnish dunnage for the proper stowage of the cargo; and, second, because a portion of the space on the vessel was already taken up with other cargo. The court below refused to accept these excuses, and was justified in so doing. The findings in that regard are sustained by the direct testimony and all the surrounding circumstances. At the outstart the general manager of the steamship company knew nothing whatever about the stowage or transportation of bananas, and so informed the appellant Grande. He exhibited to him the blueprints and diagrams of the vessel and attempted to explain the capacity of the different holds. Grande informed him that he had seen the vessel while under construction, had examined it since, and knew more about the vessel than the manager himself. He further claimed that he had 35 years' experience in the banana trade, and knew all about it.

The appellants now assert in their brief that all the bananas should have been shipped under refrigeration; that the bananas should have been stowed in an upright position on the stem end; that each bunch thus stowed would occupy or take up a space of 4½ cubic feet; that

·the capacity of hold No: 3 would not exceed 52 tons, and ·of the entire vessel beneath decks, not to exceed 156 tons, if properly stowed. How does this claim comport with the prior conduct of the appellant 'Grande? With full knowledge of the capacity of the vessel and its equipment, he delivered 400 tons of bananas for transportation, or nearly 8 times the capacity of the hold under refrigeration, and nearly three times the full capacity of the entire vessel. His claim, therefore, that the bananas were not properly stowed for lack of dunnage, or otherwise, is manifestly an afterthought. We are satisfied from the record that the bananas were improperly stowed from choice, and not from necessity, and that the wrongful act and neglect of the appellant Grande in this regard was the direct and proximate cause of the injury complained of.

Such being the case, the loss must follow the.blame, and the decree of the court below is affirmed.