14 F.2d 949 (1926)
THE KEARNEY.
NEWARK EXPRESS & TRANSPORTATION CO.
v.
HUDSON COUNTY et al.
HUDSON COUNTY et al.
v.
NEWARK EXPRESS & TRANSPORTATION CO.
Nos. 3380, 3381.
Circuit Court of Appeals, Third Circuit.
September 7, 1926.
Macklin, Brown & Van Wyck, of New York City (Paul Speer, of New York City, of counsel), for Newark Express & Transportation Co.
Arthur T. Vanderbilt, of Newark, N. J., for Hudson and Essex counties.
Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.
PER CURIAM.
These two cases are here on appeals from decrees of the District Court, dismissing the libel in the first case and the cross-libel in the second. They were tried together in the District Court, and were argued together here.
The county of Hudson and the county of Essex, in the state of New Jersey, own and operate a drawbridge over the Passaic river, called the "Clay street bridge." On September 11, 1923, the steam lighter Kearney left Madison street, Newark, N. J., on the Passaic river, for the town of Kearney, N. J., and had to pass through the Clay street bridge draw on its way. As the Kearney came near the bridge, another lighter, the Henrietta, was going through the draw about 250 feet in advance of the Kearney. After the Henrietta had passed through, the bridge tender, evidently not seeing the Kearney, started to close the bridge, whereupon, it is alleged, the Kearney blew three blasts; but they were not blown as alleged, or the bridge tender did not hear them, for he closed the bridge, and the boat struck it and damaged it, and also sustained damage itself.
The Newark Express & Transportation Company, owner of the Kearney, filed a libel against the counties of Hudson and Essex to recover for the damage done to the lighter, on the ground that the bridge tender was negligent in closing the bridge, when he saw or *950 should have seen the Kearney approaching. The counties filed an answer denying negligence, and also filed a cross-libel against the transportation company to recover for the damage done to the bridge, on the ground that the negligent operation of the Kearney resulted in the injury to it.
There are two questions of fact to determine in the first case. One is whether or not the Kearney blew three blasts, as alleged, to enter the draw; and the other is whether or not the bridge tender blew a responsive whistle for the Kearney to come on. On the first question, there is affirmative testimony both ways, that the Kearney blew and that she did not blow. A finding of the fact either way involves the credibility of witnesses. Judge Lynch, who saw and heard them testify, found that she did not blow. A fact found by the trial judge, who saw and heard the witnesses, should not be disturbed by an appellate court, unless the error is manifest and clearly against the evidence. The Dolbadarn Castle, 222 F. 838, 138 C. C. A. 264; The W. H. Flannery, 249 F. 349, 161 C. C. A. 357; The Beaver, 253 F. 312, 165 C. C. A. 94; The Mahanoy, 258 F. 114, 169 C. C. A. 200; National Dredging & Lighterage Co. v. Turney Transportation Co. (C. C. A.) 281 F. 315; American Merchant Marine Insurance Co. v. Liberty Sand & Gravel Co. (C. C. A.) 282 F. 514; Low Transportation Co. v. Davis, Director General of Railroads (C. C. A.) 9 F.(2d) 392. We feel that, under the testimony, this fact should stand as found by the trial judge.
There is also positive testimony that the bridge tender did not blow the responsive whistles for the Kearney to "come on." The master said that he heard the bridge tender, or some one, blow three whistles; but that was before the Henrietta went through, and so he did not know whether they were intended for the Kearney or the Henrietta. Judge Lynch did not make a finding on this point, except by inference. He said:
"The fault, if there was any fault, was on the part of the master of the Kearney in assuming that the engineer of the bridge would see that he was following the Henrietta through these other bridges; and they sort of proceeded along the assumption that everything would be all right, and, when it was too late, then he could not prevent the collision with the bridge; that is the way it strikes me. He assumed that the engineer of this bridge saw what had been done, passing through the other bridges, and relied on it."
The evidence justifies the finding that no one at the bridge blew any whistles for the Kearney to "come on." The fact having been found that the Kearney did not blow for the draw to open, the libel was dismissed. There was testimony from which the trial judge could find the facts, and we feel that we are not justified in disturbing them, and therefore the decree is affirmed.
He subsequently dismissed the cross-libel "for lack of jurisdiction in the court of admiralty," and the counties appealed. The question in this case is one of law. A cross-libel may be filed upon any counterclaim arising out of the same contract or cause of action, or matter auxiliary to it, for which the original libel was filed. Admiralty Rule No. 50, 254 U. S. 702; The Dove, 91 U. S. 381, 23 L. Ed. 354. As a historical fact, cross-libels were not allowed until 1856, and they have since been rather strictly construed. Snow v. Carruth, 1 Spr. 324, 327, Fed. Cas. No. 13,144; Washington-Southern Navigation Co. v. Baltimore & Philadephia Steamboat Co., 263 U. S. 629, 637, 44 S. Ct. 220, 68 L. Ed. 480.
The cross-respondent contends that the District Court had no jurisdiction over the subject-matter of the cross-libel, because the pier or bridge, being a mere extension of the land, is not within the admiralty jurisdiction, and there was nothing to sustain the jurisdiction after the libel had been dismissed. A claim arising from an injury by a vessel to a bridge, which, though over navigable waters, is connected with the shore and immediately concerned with commerce on land, is not within the admiralty jurisdiction. The Plymouth, 70 U. S. (3 Wall.) 20, 18 L. Ed. 125; Cleveland Co. v. Cleveland Steamship Co., 208 U. S. 316, 321, 28 S. Ct. 414, 52 L. Ed. 508, 13 Ann. Cas. 1215; Martin v. West, 222 U. S. 191, 197, 32 S. Ct. 42, 56 L. Ed. 159, 36 L. R. A. (N. S.) 592.
But the counties say that this rule does not apply to the cross-libel, because it arose out of the same cause of action as the original libel, over which the court had jurisdiction, and that it is the general rule of law that, when the jurisdiction of a District Court has once attached, the change of conditions will not oust the jurisdiction. Morgan v. Morgan, 15 U. S. (2 Wheat.) 290, 4 L. Ed. 242; Clarke v. Mathewson, 37 U. S. (12 Pet.) 164, 9 L. Ed. 1041; Kanouse v. Martin, 56 U. S. (15 How.) 198, 14 L. Ed. 660; Cook v. United States, 69 U. S. (2 Wall.) 218, 17 L. Ed. 755; Kirby v. American Soda Fountain Co., 194 U. S. 141, 145, 24 S. Ct. 619, 48 L. Ed. 911. There is no question about the soundness of this proposition when applied to causes in equity. The question is whether or not the rule is applicable to causes in admiralty. It *951 seems clear that the counties could not in the first place have filed a libel against the transportation company for the damage done to the bridge, for it was so connected with the shore as to be immediately concerned with commerce on land, and was not an aid to navigation in the maritime sense.
Assuming that admiralty had jurisdiction over the cause of action arising from the damage done to the boat, does the general principle of law apply that, when the jurisdiction of a District Court has once attached, it may not be ousted by a change to conditions which would not have conferred jurisdiction in the first place? While a court of admiralty exercises its appropriate jurisdiction on equitable principles, yet it does not have the characteristic powers of a court of equity. It may not reform an instrument, nor issue an injunction, nor take cognizance of nor correct a mutual mistake, nor declare or enforce a trust or an equitable title, nor relieve against a hard contract. Paterson v. Dakin (D. C.) 31 F. 682; Meyer v. Pacific Mail Steam Ship Co. (D. C.) 58 F. 923; Andrews v. Essex Fire & Marine Insurance Co., 3 Mason, 6, 16, Fed. Cas. No. 374; Ward v. Thompson, 63 U. S. (22 How.) 330, 16 L. Ed. 249; The Eclipse, 135 U. S. 599, 608, 10 S. Ct. 873, 34 L. Ed. 269; The Elfrida, 172 U. S. 186, 19 S. Ct. 146, 43 L. Ed. 413.
Jurisdiction in admiralty is confined to maritime matters. A court of admiralty, having obtained jurisdiction, cannot dispose of nonmaritime subjects for the purpose of doing complete justice. In order to dispose of common-law claims, it would have to assume the functions of a jury, and this would violate the provisions of the Constitution of the United States. The holder of a common-law claim has the right to have it adjudicated in a suit at common law, and "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." Seventh Amendment to the Constitution. The clear rule of law is that courts of admiralty will not take or maintain jurisdiction over nonmaritime claims.
A cause of action enforceable in admiralty must be wholly maritime. Turner v. Beacham, 24 Fed. Cas. p. 346, No. 14,252; The Pennsylvania, 154 F. 9, 83 C. C. A. 139 (C. C. A. 2); The Ada, 250 F. 195, 162 C. C. A. 330 (C. C. A. 2); Minturn v. Maynard, 58 U. S. (17 How.) 477, 15 L. Ed. 235; Grant v. Poillon, 61 U. S. (20 How.) 162, 15 L. Ed. 871. The scope of admiralty rule No. 50 is confined to maritime subjects. Its evident purpose was to expedite by a single suit the disposition of all maritime claims arising out of the same contract or cause of action.
The damage to the bridge was clearly non-maritime in its nature. After the dismissal of the libel, there was nothing before the court, except a cross-libel based on a non-maritime claim. The action was for a common-law tort, and must be disposed of in a court exercising common-law jurisdiction.
The decree dismissing the cross-libel is affirmed.