THE BLEAKLEY NO. 76.

THE HUSTLER.

BLEAKLEY TRANSP. CO., Inc., v. DANIEL ROE TOWING & TRANSP. CO., Inc., et al.

CARBONATE OF LIME CORPORATION v. SAME.

Nos. 24, 25.

Circuit Court of Appeals, Second Circuit.

Dec. 7, 1931.

Haight, Smith, Griffin & Deming, of New York City (Wharton Poor and James McKown, Jr., both of New York City, of coun-

sel), for appellant O. J. T. Towing & Transp. Co., Inc., claimant of The Tug Hustler.

William F. Purdy, of New York City (John E. Purdy, of New York City, of counsel), for libelant-appellee Bleakley Transp. Co.

Frederick W. Park, of New York City, for Carbonate of Lime Corporation.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

On December 9, 1927, the barge Bleakley No. 76, loaded with lime, was taken in tow by the Hustler on short hawsers at College Point, bound for the dock of the Wm. P. McDonald Construction Company at Flushing Creek, L. I. Along the easterly side of Flushing Creek from north to south, there were the following five docking facilities, to wit, Tuohy & Upton; Wm. P. McDonald Construction Company; Peace Bros.; Queens Gas Company; and Jaeger & Wagner Company. The Hustler arrived in Flushing Creek at about 1:20 a. m., and landed the barge alongside the Queens Gas Company dock about 300 feet to the south of the McDonald Construction Company's place to which she was consigned. It was high water; the tide being the first of the ebb. The barge's bow line was made fast by a deck hand on the tug and the stern line by the bargee. Before being made fast, the bargee complained that the No. 76 was being left in the wrong place, and he says the captain of the Hustler responded: "That's all right; you have got lots of water." The ebb tide sets from south to north at this point. The bargee said he inspected his boat, made soundings along the inshore, revealing a mud bottom with no unevenness, and afterwards he went to bed. About 6 a. m. he was awakened and found his barge aground in the mud with a pronounced offshore list of about 40° to 45°. A representative of the Lime Corporation testified that about 10 a. m. that same morning he found the No. 76 fast in the mud, alongside the gas company's dock, with water over her hatches. She remained in this position until removed several days later.

A disputed question of fact was presented below between this story and that of the crew of the Hustler who said they made the No. 76 fast at the Peace Bros.' dock. It is now argued that, after the tug was left at the Peace Bros.' dock, the bargee of the No. 76 towed his boat up opposite the gas company dock, or that it was removed by some

other tug while the bargee was asleep. This is denied. It seems improbable that the bargee in the middle of the night could or would heave this heavily laden barge a considerable distance up the creek against the ebb tide. The court found, on this issue of fact, that the barge was left at the gas company dock contrary to instructions, and where the bottom was uneven and unsafe.

When the Hustler arrived with the barge No. 76, she took in tow another barge, the W. O. C. No. 500, which was lying in front of Peace Bros.', whose dock is next to that of the gas company, and there is testimony that the No. 76 was made fast to the southward of where the W. O. C. was lying. The court below found that it is probable that, in order to remove the W. O. C. No. 500, the No. 76 was placed in front of the gas company dock, but that the Hustler neglected thereafter to place the No. 76 down stream at the McDonald dock where she belonged according to the terms of the towing contract.

There is testimony that the bottom at the gas company's dock was not a place customarily used for mooring boats, and that this was not a safe berth because "it is so steep it is unsafe for a boat to ground there." At 6 a. m. when the captain saw the list of his boat, she was stuck in the mud and could not be raised. The list was on the offshore side and when the tide rose the water came over the top damaging the cargo. It was negligent on the part of the tug to leave the barge in this unsafe berth, and indeed to berth her contrary to the instructions of the contract of towage. The Britannia, 213 F. 22 (C. C. A. 2); The Teddy Roosevelt (D. C.) 192 F. 997; The Governor (D. C.) 77 F. 1000; The American Eagle (D. C.) 54 F. 1010. Upon this record we are satisfied that we should not reverse the finding of the court below on the issue of fact thus presented. The Kearney, 14 F.(2d) 949 (C. C. A. 3); The Bern, 261 F. 995 (C. C. A. 2); Tompkins Cove Co. v. Bleakley Transp. Co., 40 F.(2d) 249 (C. C. A. 3).

The barge captain was also at fault in failing to take sufficient soundings, and thus learning that the berth was unsafe. He made soundings on the inshore side but did not make soundings on the offshore side. It was the duty of the bargee in the exercise of reasonable diligence, in the care of his barge, to make soundings on both sides of his vessel. That was the one reasonable and prudent thing to do in order to find out whether or not he had been placed at a safe berth. Ac-

cording to his own story, he had already complained that he was put at the wrong berth, and, when he failed to take such reasonable precautions, he took the risk of allowing his barge to rest on this uneven bottom. The W. H. Baldwin, 271 F. 411 (C. C. A. 2); Hirsch Lumber Co. v. Ottaviano, 18 F.(2d) 952 (C. C. A. 2). The bargee should have known the draft of his vessel. He had means of ascertaining the depth of water in the berth, and was bound to do so. He should have determined whether, with the tide subsiding, his boat would strike the ground, and he should have made a reasonable effort to find out the condition of the bottom. Even though his soundings, "taken all around inside," indicated plenty of water, so that he would not ground, even at low tide, this did not excuse him from sounding on the offshore side.

In The Eastchester, 20 F.(2d) 357 (C. C. A. 2), we construed the facts as giving the bargee an express assurance of the safety of the berth. In such circumstances, the bargee is under no duty to sound. But here, the berth was selected by the tug, and no such assurance was given. Under the circumstances, it was incumbent upon the bargee to examine the berth by sounding.

The decree is modified, and both the barge and the tug are held at fault.